229 So.2d 95

**STATE of Louisiana**

v.

**John Henry TAYLOR.**

No. 49655.

Jan. 20, 1970.

John Makar, Natchitoches, Henry W. Bethard, III, Caushatta, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Ronald C. Martin, Dist. Atty., John S. Stephens, Asst. Dist. Atty., for appellee.

McCALEB, Justice.

Appellant was indicted on April 15, 1968 for the murder of Newell Cox on or about April 16, 1967. He was tried on June 25, 1968, found guilty as charged and sentenced to death. During the proceedings below his two competent, court-appointed counsel reserved fifteen bills of exceptions, and they have prosecuted this appeal on his behalf in which they rely on several of the bills for a reversal of the conviction.

On April 16, 1967 Cox, allegedly accompanied by appellant, left a barroom located in Powhaten, Louisiana, in the former's truck. The following morning the body of Cox was found lying off the shoulder of a road at Hanna, Louisiana, with a bullet wound in the head. It was later determined that Cox had been shot with a 25 caliber automatic pistol. On April 18, 1967 appellant was arrested in Shreveport, Louisiana and, at that time, he had in his possession a 25 caliber automatic pistol which was taken from him by the arresting officers.[1] Also, the pick-up truck owned by decedent was found abandoned on the streets of Shreveport and in the truck was an empty beer can which contained fingerprints identified at the trial as being those of appellant. This evidence, together with other circumstantial proof, was adduced by the State.

Appellant was the only witness in his behalf. He categorically denied that he shot Cox, stating that he neither knew the decedent nor was he ever in his company. His account of his whereabouts before, at and after the time of the shooting is a weird story of journeys on interstate buses from Texas to Louisiana, thence from Louisiana back to Texas, and then from Texas to Louisiana again.

Bill of Exceptions No. 1 was reserved when the court refused to allow appellant to change his plea from "not guilty" to "not guilty and not guilty by reason of insanity." The judge stated in his per curiam that counsel waited "too long" to move for a change of plea, that appellant and his counsel being "well aware of the inquiry made into his mental capacity and state of being * * *", had ample opportunity to ask for such change prior to the morning of the trial.

1. The record does not show the reason for the delay in indicting appellant until almost a year later on April 15, 1968.

It appears from the record that defense counsel were formally appointed to represent appellant on April 19, 1968, four days after the indictment was returned and, on that day, appellant was arraigned, and a plea of not guilty entered in his behalf. Shortly thereafter, on May 3, 1968, defense counsel, having learned of the existence of certain facts concerning the mental condition of appellant which allegedly would seriously affect the defense in the case, filed a motion and secured an order from the judge for a hearing to determine appellant's mental capacity to proceed and to consider the appointment of a sanity commission.

In accordance therewith, a hearing was held on May 6, 1968. At that time, defense counsel placed the sheriff and coroner of Red River Parish on the witness stand. The coroner, Dr. L'Herisson, testified in substance that, during the month of April, 1968, he examined appellant and that, after talking with him for a little while, " * * * he impressed me as being psychotic, and I so informed the Assistant District Attorney that my impression at that time was that he was in a psychotic episode and having a schizoid or schizophrenic reaction * * *"; that he would not have " * * * the insight into what was actually going on * * *"; that he did not believe appellant's thinking " * * would fall in a normal pattern * * *"; and that while he might not be in a psy-

chotic state at the time of trial he was convinced " * * * he is schizophrenic." The coroner, upon questioning by the court, further stated that he found appellant was having illusions and delusions, that he thought he was able to converse with God and was under the impression "there had been no wrong done."

The testimony of Dr. L'Herisson was factually supported by Sheriff Kirwen Brown, who stated that some of the inmates of the jail had informed him that "John Henry was kinda' acting up," so he went up to the cell and listened to him talk; that he could not exactly understand what appellant was saying but he was doing a lot of mumbling and thought he was talking to God.

On the showing made, the judge appointed a sanity commission to examine appellant composed of three members of the medical staff of East Louisiana State Hospital and to report in writing, within thirty days, on his mental condition to understand the proceedings against him and to assist in his defense. And it was further ordered that appellant be committed to the custody of the superintendent of the State Hospital at Jackson, Louisiana until his mental capacity to proceed (present sanity) has been determined by the court.

By letter dated June 3, 1968, addressed to the judge, the three psychiatrists reported that they had examined appellant and were of the opinion he appeared to be

both mentally and intellectually capable of participating in his defense and of assisting and cooperating in a rational way with his attorneys. After receipt of this report, the judge, on June 7, 1968, ordered the clerk to advise all counsel in the case that the report of the doctors of the East Louisiana State Hospital would be homologated on June 17, 1968. On that day, the assistant district attorney offered the report of the sanity commission in evidence and the judge then concluded that, in view of the same, he was of the opinion "that the defendant is sane and mentally capable of assisting in his defense" and, accordingly, the trial would proceed on June 25, 1968, as theretofore fixed. Defense counsel then reserved a bill of exceptions, but this bill was not formally perfected.[2]

On the day of trial, however, counsel requested that they be allowed to change appellant's plea to "not guilty and not guilty by reason of insanity" as above stated. Before making his ruling the judge referred counsel to Article 561 of the Code of Criminal Procedure which provides:

"The defendant may withdraw a plea of 'not guilty' and enter a plea of 'not guilty and not guilty by reason of insanity,' within ten days after arraignment. Thereafter, the court may, for good cause shown, allow such a change of plea at any time before the commencement of the trial."

And the judge stated that, since over ten days had elapsed between the time of arraignment (April 19, 1968) and the date of trial (June 25, 1968), counsel would have to produce evidence to make a showing of good cause before he could allow the requested change of plea. Defense counsel replied that the judge was familiar with the evidence of Dr. L'Herisson, the coroner, as well as that of the sheriff given at the sanity hearing in which the coroner testified positively that he believed appellant was mentally incompetent, and that the only other evidence they were able to produce was that of an inmate, who would corroborate the statement of the sheriff that appellant was suffering from delusions while in confinement. Counsel further suggested to the judge that they were not trying to delay the trial and that they would be willing to admit without objection the report of the sanity commission, if it were offered by the State during the trial. The judge, however, was steadfast in his view, that the evidence was inadequate to establish a showing of the good cause required by the codal provision.

◼ We think the judge was in error and clearly abused his discretion under the facts and circumstances here presented. In the first place, the testimony given by

2. Nevertheless, the bill could be considered by this Court were it necessary as this is a capital case (see Art. 844, C.Cr.P.).

◼◼◼◼

the coroner (although not a psychiatrist, he was shown to have some psychiatric training), that this appellant was a schizophrenic, a well-known form of insanity (see Webster's New International Dictionary, 2nd Ed., page 2235), was sufficient in itself to justify the granting of the motion for a change of plea. And when it is considered that the medical opinion of the coroner is supported by the factual testimony of the sheriff, which was taken on the motion for the appointment of a sanity commission, and that defense counsel also offered to produce the evidence of an inmate, who had been confined in jail with appellant, to the same effect, we wonder how much more and what additional type of evidence would have been required by the judge to establish good cause for the changing of a plea.

■ But, beyond this, we believe the judge should have given serious consideration to two other factors involved. Initially, appellant was on trial for his life and, this alone, in the absence of a showing by the State that the plea was being filed solely for delay, might have been sufficient to warrant relaxation of strict adherence to the procedural rule provided by Article 561 which, according to the official comment of the redactors, was enacted to obviate the practice of dilatory tactics by defendants in criminal cases.[3]

■ Moreover, in enforcing rigidly the procedural requirements of Article 561 C.Cr.P., the judge apparently lost sight of the fact that the report of the sanity commission simply determined the issue of appellant's present sanity and that no medical opinion whatever had been voiced (other than that of the coroner) concerning appellant's sanity at the time he committed the offense. True enough, under Article 652 C.Cr.P., appellant had the burden of establishing the defense of insanity at the time of the offense by a preponderance of evidence, but this was a question of fact for the jury's determination. Evidence of the existence or nonexistence of such fact could not be admitted or considered by the jury (see Art. 651 C.Cr.P.) in view of the refusal by the judge of the request for the change of appellant's plea on the ground that it came too late.

■ We also find that the judge apparently failed to give consideration to the fact that, following arraignment, defense counsel timely applied for and the judge

---

3. In their official comment on Article 561, which is a new provision in our criminal practice and procedure, the reporters criticized the decision in State v. Watts, 171 La. 618, 131 So. 729 (1930), in which it was held that an accused had the right under the 1928 Code of Criminal Procedure to change his plea to not guilty by reason of insanity at any time before the commencement of the trial. It was observed that the new provision " * * * affords the defendant a fair and complete opportunity to urge the defense of insanity and also precludes a belated urging of the plea as a dilatory tactic."

ordered the appointment of a sanity commission, which commission reported to the judge by letter dated June 3, 1968, and this report was not homologated until June 17, 1968. During this time the issue of appellant's present insanity was still pending, that is, from May 3 to June 17, 1968, and it is fair to say that defense counsel were not remiss in failing to move for a change of appellant's plea until the sanity report had been approved. Following the homologation of the report on June 17, only seven days elapsed before the date of appellant's trial. Under these circumstances, particularly in the absence of any contention by the State that the request for a change of plea was merely a delaying tactic, the judge's ruling appears unreasonable.

We hold Bill No. 1 meritorious. In view of the fact that appellant was denied the right to present evidence respecting his alleged insanity at the time of the commission of the offense, a new trial must be granted. A review of the other bills is not necessary as most of them are either without merit or refer to alleged errors which are not likely to occur again.

For the reasons assigned, the conviction and sentence are annulled and the case is remanded to the district court for a new trial.

SANDERS, J., dissents.